**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION**

**CASE NO.**

ALEC LAWLER and
LAWLER SHOW JUMPING LLC,

       Plaintiffs,

v.

TORREY PINES STABLE FLORIDA CORP.
and ERIC LAMAZE,

       Defendants.

_____/

**COMPLAINT**

       Plaintiffs, Alec Lawler and Lawler Show Jumping LLC, by and through their undersigned attorney, files this Complaint against Defendants, Torrey Pines Stable Florida Corp. and Eric Lamaze, stating as follows:

**PARTIES, VENUE, AND JURISDICTION**

       1.      This is an action to recover damages under Florida contract law including breach of contract, unjust enrichment, and fraud in the inducement.

       2.      Plaintiffs are seeking damages in excess of $75,000.

       3.      Plaintiff, Alec Lawler, is a citizen of the United States living in the state of California ("Mr. Lawler" or "Individual Plaintiff")

       4.      Plaintiff, Lawler Show Jumping LLC, is a limited liability company operating out of California and incorporated in Delaware ("LSJ" or "Corporate Plaintiff"). Mr. Lawler is the sole owner and employee of Lawler Show Jumping LLC.

5. Defendant, Torrey Pines Stable Florida Corp., is a Florida Corporation operating out of Palm Beach County, Florida ("Torrey Pines" or "Corporate Defendant").

6. Defendant, Eric Lamaze, is the owner and president of the Corporate Defendant believed to be living in Palm Beach County, Florida ("Mr. Lamaze" or "Individual Defendant").

7. All facts giving rise to this cause of action took place in Palm Beach County, Florida and/or Belgium.

8. This court has jurisdiction subject to 28 U.S.C. §1332(a) diversity of citizenship.

## GENERAL ALLEGATIONS

9. Mr. Lawler was hired by Torrey Pines to perform services. At the instruction of Mr. Lamaze, Mr. Lawler opened Lawler Show Jumping LLC and obtained the appropriate licenses to operate in the European Union.

10. Mr. Lawler and Mr. Lamaze reached an agreement in that Mr. Lawler would scout, identify, and ready horses for Defendants to purchase. The idea was that Mr. Lawler's expertise would be used to identify which horses could then be resold for profit after Defendants' initial investment. For these services, Mr. Lawler would receive a 15% commission of whatever profit was made on the eventual resale of a horse originally scouted by Mr. Lawler. For example, if a horse identified by Mr. Lawler was purchased by Defendants and then resold for a profit of $100,000, Lawler would receive $15,000 for his work.

11. This was an oral agreement originally.

12. Mr. Lamaze then cemented the agreement in writing through a text message conversation via the program WhatsApp. Mr. Lamaze stated specifically "I will give you 15

percent of my profit" after naming 3 of the horses to potentially purchase. Mr. Lamaze goes on to say, "Correct this should motivate you [money bag emoji]."[1]

13. Mr. Lawler identified and helped the purchase of several horses. Their names and original purchase price are below:

- Lord Up - €225,000
- Galino - €225,000
- Alfonsine Manciaise - €300,000
- Crescenda Z - €200,000
- Ayade Hero Z - €125,000
- Storiall Blue - €75,000

14. The horse Lord Up sold for €350,000. This makes for a €125,000 profit and a commission of €18,750.

15. The horse Galino sold for €500,000. This makes for a €275,000 profit and a commission of €41,250.

16. The horse Alfonsine Manciaise sold for €500,000. This makes for a €200,000 profit and a commission of €30,000.

17. The horse Crescenda Z sold for €200,000. This makes for a €0 profit and therefore no commission is owed.

18. The horse Ayade Hero Z sold for €350,000. This makes for a €225,000 profit and a commission of €33,750.

19. The commission total for these first 5 horses comes to €123,750.

---

[1] See Exhibit A – July 24 WhatsApp screenshot

20. After the re-sale of the first 5 horses, Mr. Lawler billed Defendant Torrey Pines €100,000 through his company, LSJ. The invoice names the horses specifically and was sent on or about September 1, 2018.[2]

21. The invoicing program used by Plaintiffs shows when this invoice is accessed by the client. The program shows that the invoice was sent on September 1, 2018 and viewed for the first time by Defendant Torrey Pines 21 minutes later and again on September 21, 2018. Plaintiffs resent the invoice on January 9, 2019 with Torrey Pines viewing it again the following day.[3]

22. Since the invoice, the horse Storiall Blue was sold for an undisclosed amount. Mr. Lawler estimates the sale to be worth €750,000 resulting in a profit of €675,000 and an owed commission of €101,250. Should it be revealed that the real sale price and profit are different from the estimates, the owed commission would naturally be different.

23. Mr. Lawler made several attempts to collect the owed commission at the discounted amount of €100,000. These are noted in several emails and text messages. The messages seem to have been disregarded by Mr. Lamaze and not responded to specifically.

24. Shortly after the invoice was sent, Mr. Lamaze acknowledges the owed commissions in a WhatsApp conversation with Mr. Lawler, mentioning the commissions specifically after Mr. Lawler had asked Mr. Lamaze's executive assistant, Marie Fraisse, for the owed money.[4] Ms. Fraisse handles nearly all of the monetary transactions for the corporate Defendant and many for the individual Defendant. It is unclear if Ms. Fraisse works for Torrey Pines, Mr. Lamaze individually, or both simultaneously.

---

[2] See Exhibit B – Invoice
[3] See Exhibit C – Invoice log
[4] See Exhibit D – September 14 WhatsApp screenshot

25.     Another WhatsApp conversation on December 20, 2018 shows Mr. Lawler giving his banking info to Mr. Lamaze at Mr. Lamaze's request to pay the owed commissions.[5]

26.     Mr. Lawler sent Ms. Fraisse a message on WhatsApp on January 31, 2019 concerning the owed commissions. In this conversation, Ms. Fraisse seems to make it known that the owed commissions are separate from the company and owed by Mr. Lamaze personally. She also confirms the amount as "100."[6]

27.     As of this filing, no owed commission has been paid to Plaintiffs.

28.     Plaintiffs were forced to hire the undersigned attorney due to this dispute.

29.     Following an initial conversation between the attorney for Plaintiffs and Mr. Lamaze, Mr. Lamaze sent a message to Mr. Lawler telling him that he has made a "big mistake." Mr. Lamaze then claimed that there was no written contract between the parties making it known that there would be no payment for the commissions. He then acknowledges the text messages concerning the commissions. The text message confirms that the parties did have an agreement despite Mr. Lamaze's efforts to threaten Mr. Lawler to the contrary.[7]

**COUNT I: BREACH OF CONTRACT**
**Between Plaintiffs and Defendant Torrey Pines**

30.     Plaintiffs re-adopt each and every factual allegation as stated in paragraphs 1 through 29 above as if set out in full herein.

31.     Plaintiff Alec Lawler and/or Plaintiff LJS entered into an oral contract with Mr. Lamaze to perform services for Defendant Torrey Pines on or before July 24, 2018.

---

[5] See Exhibit E – December 20 WhatsApp screenshot
[6] See Exhibit F – January 31 WhatsApp screenshot
[7] See Exhibit G – May 23 WhatsApp screenshot

32. The contract was for Mr. Lawler to scout horses to be purchased by Defendant Torrey Pines in order to be potentially resold at a profit. Mr. Lawler was to be paid 15% of the profit as his only compensation for the agreement.

33. The agreement was confirmed in a text message dated July 24, 2018 between Mr. Lawler and Mr. Lamaze, the President of Defendant Torrey Pines.

34. Mr. Lawler scouted many horses with 6 eventually purchased by Defendant, with 5 then resold at a profit.

35. Under the contract, Plaintiffs are owed an estimated €225,000 based on the 15% commission structure.

36. As of the filing of this complaint, Defendant has not paid Plaintiffs the owed commissions.

37. Defendant has breached the Agreement.

38. Plaintiffs have been damaged.

### COUNT II:  BREACH OF CONTRACT
### Against Defendant Eric Lamaze

39. Plaintiffs re-adopt each and every factual allegation as stated in paragraphs 1 through 38 above as if set out in full herein.

40. The agreement described in Count I was specifically offered and accepted by Mr. Lamaze.

41. As the owner and President of the Corporate Defendant, Mr. Lamaze is normally considered an agent for the Corporate Defendant.

42. However, text messages between Mr. Lawler and Mr. Lamaze's assistant, Ms. Fraisse, shed doubt on whether the agreement is between Plaintiffs and the Corporate Defendant or with Mr. Lamaze personally. As the executive assistant for the corporate Defendant, Ms.

Fraisse is in position to know which contracts are made by the Corporate Defendant and which are not. She made it known to Mr. Lawler that the commission payments owed to him were separate from her role as the executive assistant to the Corporate Defendant. Mr. Lawler performs other duties for the Corporate Defendant which are separate from his scouting horses. Ms. Fraisse makes it known that the commissions are separate and do not come under her purview as executive assistant for Torrey Pines.

43. Because Ms. Fraisse claims to not be responsible for the commission payments, it can only be assumed that the contract inciting the commission payments was entered into by Mr. Lamaze individually.

44. Therefore, Mr. Lamaze is individually liable for the payment of the contract for 15% commission on the resale of horses scouted by Mr. Lawler.

45. Mr. Lawler has performed his end of the contract with Mr. Lamaze.

46. As of the filing of this complaint, no commission has been paid to Mr. Lawler or his company.

47. Mr. Lamaze has breached the Agreement.

48. Plaintiffs have been damaged.

49. In the alternative, Mr. Lamaze has used funds from the Corporate Defendant to make purchases for his own personal benefit rather than the company. He is using corporate funds interchangeably as personal use. Because of this, Mr. Lamaze is personally liable for the breach of contract perpetrated by the Corporate Defendant against Mr. Lawler.

**COUNT III: FRAUD IN THE INDUCEMENT**
**Against Torrey Pines**

50. Plaintiffs re-state and re-allege paragraphs 1 through 29 as if set forth in full herein.

51. Mr. Lamaze is an agent of Defendant Torrey Pines. As such, statements and promises made by Mr. Lamaze are considered statements and promises of the company if they were made in his capacity as an agent of Defendant Torrey Pines.

52. Mr. Lawler performed all actions personally through his business LSJ.

53. Mr. Lamaze made representations to Mr. Lawler that he would pay him 15% of his profits for reselling horses scouted and recommended by Mr. Lawler. In text messages from Mr. Lamaze to Mr. Lawler, Mr. Lamaze specifically says "I will give you 15% of my profit" followed by "Correct this should motivate you [money bag emjoi]."

54. Mr. Lawler relied on this information in scouting and readying 6 horses for purchase for Defendants. These horses were very profitable, generating an estimated €1,500,000 profit from their sales.

55. Following Mr. Lawler's billing of Torrey Pines for his portion of the profit and subsequent follow up attempts to collect, Mr. Lamaze made it clear that he never had any intention of paying Mr. Lawler his share of the profit. In a text message dated May 23, 2019,[8] Mr. Lamaze claims to have never had a contract with Mr. Lawler only a couple text messages and that he will purposely hold up any potential lawsuit in court for as long as he can.

56. Due to this message, it was clear that the earlier representations of Mr. Lamaze were false as he never intended to pay Mr. Lawler for his work in scouting and purchasing the horses.

57. Because Mr. Lawler was never meant to be paid, Torrey Pines never intended to fulfill the promises made in exchange for Mr. Lawler's work.

---

[8] See Exhibit G

58. Mr. Lamaze made the representations knowing them to be false, or with reckless disregard as to their truth or falsity, with the intent to fraudulently induce Mr. Lawler to rely on them by performing his work in scouting and purchasing horses for Torrey Pines. Mr. Lamaze's representations as to actions/payment that would be made in the future were made with the present intent not to perform.

59. Mr. Lamaze's representations were material to Mr. Lawler's decision to begin working for Torrey Pines.

60. Mr. Lawler reasonably relied on Mr. Lamaze's representations in deciding to begin working for Torrey Pines. Mr. Lawler did not know that the representations were false and had no reasonable independent means of ascertaining their truth or falsity.

61. As the direct and proximate result of reliance on Mr. Lamaze's representations, Mr. Lawler sustained pecuniary injury by Torrey Pines' failure to give full compensation in accordance with Mr. Lamaze's representations.

62. Plaintiffs reserve the right to amend this Complaint to seek punitive damages.

## COUNT IV: FRAUD IN THE INDUCEMENT
**Against Eric Lamaze**

63. Plaintiffs re-state and re-allege paragraphs 1 through 29 and 52-62 as if set forth in full herein.

64. The fraudulent representations alleged in Count III are attributed to Mr. Lamaze.

65. Considering statements made by Ms. Fraisse, it is unclear whether Mr. Lamaze made the statements and promises on behalf of himself or on behalf of Defendant Torrey Pines.

66. Mr. Lamaze made promises of compensation to motivate Mr. Lawler to work for him personally.

67. Mr. Lawler relied on these statements and performed the work requested.

68. Mr. Lamaze made statements in text message form showing that there was no intent to ever compensate Mr. Lawler for his services.

69. Because Mr. Lawler was never meant to be paid, Mr. Lamaze never intended to fulfill the promises made in exchange for Mr. Lawler's work.

70. Mr. Lamaze made the representations knowing them to be false, or with reckless disregard as to their truth or falsity, with the intent to fraudulently induce Mr. Lawler to rely on them by performing his work in scouting and purchasing horses. Mr. Lamaze's representations as to actions/payment that would be made in the future were made with the present intent not to perform.

71. Mr. Lamaze's representations were material to Plaintiff's decision to perform work.

72. Mr. Lawler reasonably relied on Mr. Lamaze's representations in deciding to begin working for Defendants. Mr. Lawler did not know that the representations were false and had no reasonable independent means of ascertaining their truth or falsity.

73. As the direct and proximate result of reliance on Mr. Lamaze's representations, Plaintiffs sustained pecuniary injury by Mr. Lamaze's failure to give full compensation in accordance with his representations.

74. Plaintiffs reserve the right to amend this Complaint to seek punitive damages.

## COUNT V:  UNJUST ENRICHMENT
### Against Defendant Torrey Pines

75. Plaintiff incorporates paragraphs 1-29 above.

76. At all relevant times, Defendant Torrey Pines engaged Mr. Lawler to perform services including scouting horses to purchase and resell for profit.

77. Mr. Lawler agreed to work for Torrey Pines in exchange for agreed and certain compensation.

78. Torrey Pines was the recipient of the benefit of services provided by Mr. Lawler.

79. By services being rendered to Torrey Pines by Mr. Lawler, Torrey Pines intended to profit from those services through third parties. By selling the horses scouted and procured by and through Mr. Lawler, Torrey Pines made a substantial profit. Torrey Pines benefited from Mr. Lawler's labor in the form of monetary compensation from third parties.

80. Torrey Pines failed to pay Mr. Lawler his agreed compensation for services rendered.

81. Torrey Pines cannot simply pay back the benefit received as it was a service rendered by Mr. Lawler. This time spent can only be repaid with monetary compensation.

82. As a result of services rendered to Torrey Pines by Mr. Lawler and Torrey Pines' failure to pay for these services, Torrey Pines has been unjustly enriched by Mr. Lawler causing him to have suffered damages.

83. Plaintiffs have retained undersigned counsel to represent them in this matter and have agreed to pay said firm a reasonable attorney's fee for its services.

### COUNT VI: UNJUST ENRICHMENT
### Against Defendant Eric Lamaze

84. Plaintiff incorporates paragraphs 1-29 and 75-83 above.

85. The allegations in Count V are based on statements and actions made by the Owner and President of the Corporate Defendant, Eric Lamaze.

86. Mr. Lamaze is an agent of the Corporate Defendant. However, messages sent by the executive assistant of Mr. Lamaze and the Corporate Defendant to Mr. Lawler suggest that

the actions described in Count V were made on behalf of Mr. Lamaze individually rather than for the company.

87. In that case, Mr. Lamaze is individually liable for the unjust enrichment alleged in Count V.

88. Mr. Lawler then agreed to work for Mr. Lamaze in exchange for certain compensation.

89. Mr. Lamaze was the recipient of the benefit of services provided by Mr. Lawler.

90. By services being rendered to Mr. Lamaze by Mr. Lawler, Mr. Lamaze intended to profit from those services through third parties. By selling the horses scouted and procured by and through Mr. Lawler, Mr. Lamaze made a substantial profit. Mr. Lamaze benefited from Mr. Lawler's labor in the form of monetary compensation from third parties.

91. Mr. Lamaze failed to pay Mr. Lawler his agreed compensation for services rendered.

92. Mr. Lamaze cannot simply pay back the benefit received as it was a service rendered by Mr. Lawler. This time spent can only be repaid with monetary compensation.

93. As a result of services rendered to Mr. Lamaze by Mr. Lawler and Mr. Lamaze's failure to pay for these services, Mr. Lamaze has been unjustly enriched by Mr. Lawler causing Mr. Lawler to have suffered damages.

94. In the alternative, Mr. Lamaze has used funds from the Corporate Defendant to make purchases for his own personal benefit rather than the company. He is using corporate funds interchangeably as personal use. Because of this, Mr. Lamaze is personally liable for the unjust enrichment perpetrated by the Corporate Defendant against Mr. Lawler.

95. Plaintiffs have retained undersigned counsel to represent them in this matter and have agreed to pay said firm a reasonable attorney's fee for its services.

**WHEREFORE**, Plaintiffs, respectfully request this Court grant the following relief:

A. An award to Plaintiffs for actual damages in the amount shown to be due for unpaid invoices and services rendered, with interest;

B. A determination that Defendant Eric Lamaze is found jointly and severally liable for the damages of this Complaint due to his individual role in causing the damages and benefitting personally from their perpetration;

C. An award of costs of this action together with reasonable attorneys' fees;

D. Such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable as of right.

Dated: July 11, 2019.

Respectfully submitted,

By: __/s/ R. Edward Rosenberg_____
R. Edward Rosenberg, Esquire
Fla. Bar No.: 88231
Email: rer@sorondorosenberg.com
Sorondo Rosenberg Legal PA
1825 Ponce de Leon Blvd. #329
Coral Gables, FL 33134
786.708.7550

Attorney for Plaintiffs